## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division


VIRGINIA INTERNATIONAL
TERMINALS, LLC,

                 Plaintiff,

v.                                              Action No. 2:17cv537

KEYSTONE TRANSPORTATION
SOLUTIONS, LLC,

                 Defendant.


### UNITED STATES MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

This matter is before the Court on a motion for default judgment, filed on December 12, 2017, by plaintiff Virginia International Terminals, LLC ("VIT"), against defendant Keystone Transportation Solutions, LLC ("KTS"). ECF No. 10. VIT's motion was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. ECF No. 11. The Court recommends that VIT's motion be **GRANTED IN PART** and **DENIED IN PART**.

### I.      PROCEDURAL HISTORY

On October 12, 2017, VIT filed this action against KTS alleging breach of contract and seeking monetary damages (count one) and declaratory relief (count two). Compl., ECF No. 1. Due to KTS's failure to enter an appearance or otherwise file a responsive pleading, the Clerk

entered default against KTS on November 17, 2017. ECF No. 9. Thereafter, VIT filed the pending motion on December 12, 2017. ECF No. 10. KTS did not respond, and the deadline for a response has expired. On February 20, 2018, the Court held a hearing on the motion.[1] ECF No. 15. David Ventker, Esq., and Marissa Henderson, Esq., represented VIT. *Id.* Neither KTS nor a KTS representative appeared. *Id.* After the hearing, the Court ordered supplemental briefing related to the propriety of declaratory relief, the reasonableness of attorneys' fees, and certain invoices labeled "Rail: Container/Chassis." ECF No. 16. VIT filed its supplemental brief in support of default judgment on March 5, 2018. ECF No. 21.

## II.    FACTUAL BACKGROUND

The following factual allegations from the complaint are deemed admitted by virtue of KTS's default. VIT is an entity that manages the Virginia Inland Port (the "terminal") in Front Royal, Virginia. Compl., ECF No. 1 ¶ 4. On or about August 1, 2015, KTS, which desired to "fumigate, handle, and stuff logs into shipping containers at the Terminal," entered into a license agreement with VIT (the "agreement"). *Id.* ¶ 5. As part of the agreement, VIT licensed a portion of the terminal to KTS so that KTS could provide its desired services. License Agreement, ECF No. 1-1 at 1. In exchange, "KTS agreed to pay VIT a monthly License Fee and a monthly Variable Fee based on the numbers of containers KTS handled at the Terminal." Compl. ¶ 8. Section three of the agreement details the fees and charges to be paid to VIT. ECF No. 1-1 at 3. Section 3(a) specifies that KTS would pay VIT a fee of $10,000.00 per month for the licensed

---

[1] On January 24, 2018, the undersigned entered an order directing counsel to schedule a hearing. ECF No. 12. The Clerk was directed to send a copy of that order to KTS's registered offices in Virginia and Pennsylvania. *Id.* That order was returned undeliverable as to KTS's Pennsylvania office. ECF No. 17. Similarly, a notice of hearing addressed to the same locations was returned undeliverable as to KTS's Pennsylvania office on February 8, 2018, and as to KTS's Virginia office on February 22, 2018. ECF Nos. 14, 18. An order entered after the hearing that supplemental briefing be filed was also returned as undeliverable as to both offices. ECF Nos. 19–20.

use of the premises. *Id.* Section 3(c)(i) of the agreement provides, among other things, that KTS must pay VIT $85.00 per container for every container it processed, beginning in August 2015. *Id.* at 4. The agreement also incorporated the VIT Schedule of Rates and the Virginia Inland Port Tariff. Compl. ¶ 9. The schedule of rates and tariff set forth rail service charges, which KTS incurred when moving containers from the terminal to other terminals operated by VIT in Hampton Roads. *Id.* KTS has admitted by its default that VIT at all times performed its obligations under the agreement. *Id.* ¶ 7. KTS has further admitted that it failed to provide services as required in the agreement, and that it failed to make the required payments under the agreement. *Id.* ¶¶ 11–15.

Section 14(b) of the agreement states, in part, "[i]f any payment due to VIT under this Agreement is not paid when due, then at VIT's option such unpaid sum shall bear interest at an annual rate of twelve percent (12%), or the highest legal rate if lower, from the date it is due until paid." ECF No. 1-1 at 11–12. VIT has submitted invoices and a chart that show the payments owed and the interest accrued. ECF No. 1-2.

KTS has purported to assign any tort and contract claims arising from VIT's termination of the agreement to Teak, LLC, which was created under the laws of Delaware on or about March 22, 2017. Compl. ¶ 17. With respect to assignments, the agreement provides that:

> **9. Assignment and Sublicensing.** Licensee shall not assign or transfer this Agreement, or sublicense any part of the Premises, in whole or in part, without the prior written consent of VIT, which consent VIT may withhold in its sole discretion.

ECF No. 1-1 at 8. Teak has made written and verbal demands to VIT for monetary damages allegedly suffered by KTS related to or arising from the agreement. Compl. ¶¶ 18–19. Prior to these demands, VIT had no relationship with Teak, which did not exist at the time the agreement was terminated. Compl. ¶ 22.

3

The agreement further provides:

> **10. Indemnification.** (a) Except to the extent caused by the negligence or intentional misconduct of the VIT Parties,[2] Licensee shall indemnify, defend and hold harmless the VIT Parties from and against all liability, claims, actions, suits, losses, damages, fines, penalties, fees, and expenses (including without limitation attorney's and consultant's fees and expenses), of every kind and nature (a) incurred by, or asserted or threatened against, any of the VIT Parties and (b) arising out of or related to (i) the use of the Terminal or the Premises by any of the Licensee Parties, (ii) activities of any of the Licensee Parties on the Terminal or the Premises, (iii) Licensee's breach of this Agreement, and/or (iv) the discovery of any Hazardous Materials brought on to the Terminal or Premises by any of the Licensee Parties.

ECF No. 1-1 at 8. Relatedly, the agreement also requires KTS to maintain liability insurance in connection with its obligations under paragraph ten recited above. Compl. ¶ 24; ECF No. 1-1 at 9 ("Such liability insurance shall also . . . include contractual liability for [KTS's] indemnity and hold harmless obligations under this Agreement.").

## III. JURISDICTION AND VENUE

To render a default judgment, the Court must have subject matter jurisdiction over the case and personal jurisdiction over the defaulting parties. Venue must also be proper. Here, the Court has subject matter jurisdiction over VIT's claims based on diversity of citizenship pursuant to 28 U.S.C. § 1332, because VIT is a Virginia limited liability company, KTS is a Pennsylvania limited liability company, and the amount in controversy exceeds $75,000.00. The Court also has federal question subject matter jurisdiction over count two pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

The Court has personal jurisdiction over KTS because KTS transacted business in the state of Virginia which gave rise to the cause of action. *See* Va. Code Ann. § 8.01-328.1(A)(1); Fed. R. Civ. P. 4(k)(1)(A). Further, section 20 of the agreement states that "[t]he state and

---

[2] "VIT Parties" includes VIT. ECF No. 1-1 at 8.

federal courts having territorial jurisdiction in Norfolk, Virginia shall have exclusive jurisdiction and shall be the exclusive venue for the resolution of all disputes arising out of or relating to this Agreement or the Premises. This Agreement shall be deemed made in Norfolk, Virginia regardless of which party is the last to sign." ECF No. 1-1 at 14. *See Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213 (4th Cir. 2007) ("A forum-selection clause is 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'"). Venue is also proper by virtue of the forum selection clause.

## IV.   LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b). A court must "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)). The United States Court of Appeals for the Fourth Circuit has expressed "a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Default judgment may be appropriate, however, "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Although a defaulting party admits the factual allegations in the complaint, a court must evaluate the sufficiency of the allegations to determine if the complaint states a cause of action.

*See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). *See also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to plaintiff where plaintiff failed to state a valid claim).

## V.   ANALYSIS

### A. KTS is liable for breach of contract, and VIT is entitled to its requested damages, with the exception of two invoices which predate the agreement.

#### 1. VIT is entitled to recover its requested damages, with the exception of two March 2015 invoices.

In count one, VIT alleges that KTS breached the license agreement by not paying VIT what was due under the agreement.   In its motion, VIT seeks judgment in the amount of $191,551.05, plus interest of $47.15 per day beginning from December 31, 2017.  ECF No. 10 at 3; ECF No. 10-3.  This number purportedly represents the $165,244.80 VIT claims it would be owed as of December 31, 2017, plus $31,306.25 in attorneys' fees VIT claims to have accrued "to investigate the claims made against it by Teak, LLC in violation of the License Agreement and to pursue this recovery action." ECF No. 10 at 2.  The Court notes, however, that those two amounts (amounts due under the agreement and attorneys' fees) do not add up to the total amount requested, but rather total $196,551.05.  In any case, the Court concludes that VIT is not entitled to all of the damages it asks for, and the amounts will be adjusted.

To succeed on a claim for breach of contract under Virginia law, VIT must prove

(1) KTS had a legally enforceable obligation to VIT; (2) KTS breached that obligation; and (3) KTS's breach caused injury or damage to VIT. *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009) (citing *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). A Virginia cause of action for breach of contract is subject to a five-year statute of limitations period, which begins to run from the date the breach occurs. Va. Code Ann. § 8.01-246(2).

To support the first element, VIT submitted the license agreement entered into between VIT and KTS on August 1, 2015, which specifies the terms and conditions of the contractual relationship. ECF No. 1-1. The fees and charges to be paid by KTS to VIT are covered in section three of that agreement. *Id.* at 3–5. Section 14 of the agreement specifies that failure by KTS to pay any fees within five days of written notice of such failure is deemed to be an event of default. *Id.* at 11. This agreement establishes that KTS owed VIT a legally enforceable obligation under the first element of breach of contract.

To support the second element, VIT alleged that "KTS has failed and refused to provide services to VIT or VIT's customers as required by the Agreement," and that KTS is indebted to VIT under the agreement. Compl. ¶¶ 11–14. These factual allegations are deemed admitted by KTS's default, and VIT has thus satisfied the second element of breach of contract.

This brings the Court to the third element, the injury or damages KTS's breach caused VIT. VIT argues that the amounts set forth in the complaint are factual allegations that are deemed admitted because KTS did not respond to them. ECF No. 21 at 2–3. According to VIT, the Court need look no further. VIT is mistaken. "Although well-pleaded factual allegations are accepted as true for default judgment purposes, a party who defaults does not admit the allegations in the claim as to the amount of damages." *S. Bank & Trust Co. v. Pride Grp., LLC*, No. 2:14cv255, 2015 WL 410726, at *4 (E.D. Va. Jan. 28, 2015); *see also JK Moving & Storage,*

*Inc. v. J & K Moving LLC*, No. 1:17cv849, 2017 WL 4800737, at *1 (E.D. Va. Oct. 4, 2017) ("'An allegation–other than one relating to the amount of damages–is admitted if a responsive pleading is required and the allegation is not denied.'") (quoting Fed. R. Civ. P. 8(b)(6)); *Parlier v. Casteen*, No. 5:14cv85, 2016 WL 3032692, at *2 (W.D.N.C. May 26, 2016) ("If the court finds that liability has been established, it must then determine damages. Such a determination requires an independent examination of the evidence, and the court must not accept mere allegations of damages as being sufficient."). VIT cannot couch its damages claim as a factual contention, and then assert that it is "an established fact." *See* ECF No. 21 at 3. The Court must "independently calculate the appropriate amount of damages." *Pride Grp., LLC*, 2015 WL 410726, at *4 (citing *Ryan*, 253 F.3d at 780–81).

To support its damages claim, VIT submitted invoices of the amounts owed by KTS. ECF No. 1-2. VIT also submitted an affidavit of Daniel LeGrande, VIT's director of inland terminals and sales support. ECF No. 10-3. The affidavit, however, provides little more than the amounts owed, which are already recited in the complaint and in the motion for default judgment.

VIT seeks to recover three separate types of expenses under the agreement. The first is for office, land, and space rental. *See* ECF No. 1-2. With respect to this rental, the agreement provides in section 3(a) that KTS shall pay a fee of $10,000.00 per month for licensed use of the premises. ECF No. 1-1 at 3. Invoices reflect that KTS defaulted on this payment in full in March 2016 and every month from May 2016 through March 2017, totaling 12 months. ECF No. 1-2. In April 2016, KTS paid $8,413.01 towards rent, leaving a balance due of $1,586.99. *Id.* at 3. This leaves unpaid rent, properly recoverable under section 3(a) of the agreement, in the amount of $121,586.99, plus interest.

8

The second item VIT seeks to recover is for "KTS Containers." *See* ECF No. 1-2. Section 3(c)(i) of the agreement provides, among other things, that KTS must pay $85.00 per container for every container handled by KTS beginning August 2015. ECF No. 1-1 at 4. VIT has submitted invoices for April 2016 (5 containers for $425.00); May 2016 (10 containers for $850.00); June 2016 (14 containers for $1,190.00); and July 2016 (14 containers for $1,190.00). ECF No. 1-2. This amounts to $3,655.00, plus interest, properly recoverable under section 3(c)(i) of the agreement.

Finally, VIT charges for invoices labeled "Rail:  Container/Chassis." *See* ECF No. 1-2. There are four such invoices.  Two of the invoices are for rail services predating August 1, 2015, the effective date of the agreement.  These two invoices reflect charges of $1,107.45 for rail services performed on March 25, 2015, ECF No. 1-2 at 4, and $3,691.50 for rail services performed on March 20 and 26, 2015, ECF No. 1-2 at 6.  When questioned further about these invoices at the hearing, VIT averred that there were prior agreements which were incorporated into the license agreement at issue in this case and, in a later filing, ECF No. 21, directed the Court to section 16 of that agreement, which states:

> [A]ny liabilities and obligations arising or accruing under the Log Handling Services and License Agreement between the parties dated October 20, 2014, as amended by the Amendment to Log Handling Services and Licensing Agreement effective June 1, 2015, and arising or accruing under the Temporary License Agreement for Office Use dated December 1, 2014, including without limitation those relating to indemnification, shall survive.

ECF No. 1-1 at 2. The plain language of this provision, while referencing prior agreements, does not incorporate prior agreements, as VIT claims.  Rather, it merely states that liabilities and obligations arising under such agreements survive.  In essence, it makes clear that the new agreement does not invalidate the old agreements.  Accordingly, the two invoices for services rendered in March 2015 are not recoverable under the contract at issue in this case.

9

The other two invoices labeled "Rail: Container/Chassis" are recoverable. This includes an invoice dated January 11, 2017 for $3,653.55, ECF No. 1-2 at 19, and an invoice dated February 15, 2017 for $761.30, *id.* at 21. The total sum recoverable for rail charges is thus $4,414.85, plus interest.

Regarding interest, section 14(b) of the agreement states that "[i]f any payment due to VIT under this Agreement is not paid when due, then at VIT's option such unpaid sum shall bear interest at an annual rate of twelve percent (12%), or the highest legal rate if lower, from the date it is due until paid."[3] ECF No. 1-1 at 12. VIT attached a summary of the unpaid invoices, which includes a description of each of the invoices, the amount owed for each, the number of days past due for each, the interest owed for each, and the total amount. ECF No. 1-2 at 1. At the hearing, VIT's counsel confirmed that VIT was using the 12% interest rate provided for in section 14(b) of the agreement. The Court has further confirmed through independent calculation that this is the interest rate used. The Court concludes that VIT is entitled to 12% interest on each of the recoverable items detailed above.

The total amount properly recoverable under the agreement is $129,656.84, plus interest. The interest for each recoverable invoice is to be calculated separately from the due date displayed on the invoice. Because a final interest calculation cannot be made until a final order is entered, VIT must submit a final interest calculation upon the filing of such an order.

---

[3] Va. Code Ann. § 6.2-302 specifies that the judgment rate of interest shall be six percent, "except that a money judgment entered in an action arising from a contract shall carry interest at the rate lawfully charged on such contract." The Court has found no law suggesting that a 12% interest rate is not lawfully charged. *Cf.* Va. Code Ann. § 6.2-303 (setting a maximum interest rate of 12% on loan contracts); *Am. Standard Homes Corp. v. Reinecke*, 425 S.E.2d 515, 519–520 (Va. 1993) (approving a contracted-for interest rate of 18% because "[c]ourts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed") (internal quotations omitted).

2. **VIT is not entitled to recover its attorneys' fees, because it has not sufficiently documented the reasonableness of such fees.**

VIT also seeks to recover its attorneys' fees of $31,306.25.  ECF No. 10 at 2.   The agreement provides that "[e]ach party agrees to pay or reimburse the other party for any and all costs (including without limitation, collection costs, court costs and *reasonable attorney's fees*) incurred by such party in connection with a default by the defaulting party hereunder and/or enforcement against the defaulting party of any term or provision of this Agreement."  ECF No. 1-1 at 12 (emphasis added).   To support its request for attorneys' fees, VIT submitted the LeGrande affidavit, which states that "VIT has incurred attorneys fees in excess of $31,306.25 to investigate the claims made against it by Teak, LLC in violation of the License Agreement, and to pursue this recovery action."  ECF No. 10-3 at 2.  VIT also submitted a document entitled "Ventker Henderson Fees as of 12/08/17," which lists five dates with a fee amount charged on those five dates.  ECF No. 10-3 at 3.  The document contains no other information which the Court can use to judge the reasonableness of the fees.

At the hearing and in the subsequent order, the Court directed VIT to provide additional information which would assist the Court in determining the reasonableness of the fees sought, as required by the agreement.  ECF No. 16.  The Court directed VIT's attention to *Robinson v. Equifax*, 560 F.3d 235 (4th Cir. 2008), and *Barber v. Kimbrells, Inc.*, 577 F.2d 216 (4th Cir. 1978), as illustrative of the factors a court should consider in light of a request for reasonable attorneys' fees.  In response, VIT stated that providing additional information did not make economic sense in light of KTS's likely insolvency, and that it believed it had provided enough information to the Court to judge the reasonableness of its fees.  ECF No. 21 at 10.

"District courts have discretion in determining attorneys' fees, but there must be some evidence supporting the reasonableness of these fees."  *United Mktg. Sols., Inc. v. Fowler*, No.

11

1:09cv1392, 2011 WL 837112, at *1 (E.D. Va. Mar. 2, 2011). VIT has the burden of establishing the reasonableness of its fees, "both by showing the reasonableness of the rate claimed and the number of hours spent." *Rehab. Ass'n of Va., Inc. v. Metcalf*, 8 F. Supp. 2d 520, 527 (E.D. Va. 1998); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *see also JK Moving & Storage*, 2017 WL 4800737, at *5 ("Moreover, plaintiff must establish the reasonableness of the requested fees and costs, including the hours worked and the requested rates.") (citing *Plyler*, 902 F.2d at 277).

VIT has continued to rely on a conclusory figure, with no additional support for that figure's reasonableness. VIT cannot rely on the "sum certain" provision of Rule 55(b)(1),[4] because by its explicit language, the license agreement entitles VIT only to its *reasonable* attorneys' fees. Reasonable attorneys' fees are not a sum certain, because the reasonableness of such fees "is a 'judgment call' which only the Court can make." *Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 475 (D.D.C. 1984).

In *S. Bank & Trust Co. v. MLP Dev. Corp.*, the plaintiff sought its reasonable attorneys' fees in a default judgment action pursuant to a breach of contract. No. 2:15cv53, 2015 WL 5567078 (E.D. Va. Sept. 21, 2015). However, the plaintiff did not provide evidence other than testimony that the requested fees were "'reasonable,' albeit they were on the 'higher end' of the market rate," and a summary invoice which listed the total amounts billed, similar to the invoice

---

[4] Rule 55(b)(1) provides:

> "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."

Fed. R. Civ. P. 55(b)(1).

submitted in this case. *Id.* at *4–5. Upon further questioning, the plaintiff presented some information about the background and qualifications of the attorneys. *Id.* Faced with this meager record, the court denied the request for attorneys' fees due to an insufficiency of proof. *Id.* at *5.

The same disposition is appropriate here, where VIT has presented no evidence by which the Court can analyze the reasonableness of the fee request. Indeed, the record in this case is even less robust than that considered in *S. Bank & Trust*. Even more problematic here is the fact that VIT requests attorneys' fees related to two separate matters: the collection action that comprises this suit, and the investigation into Teak's claims that may comprise a future suit by Teak against VIT. VIT does not even separate which fees are spent on which of those two endeavors, and instead admits that "the legal effort dedicated to the collection action has been substantially less than the fees incurred in responding to the demands by Teak for payment." ECF No. 21 at 9. Faced with this lack of evidence, the Court recommends that VIT's request for attorneys' fees be DENIED.[5]

**B. VIT is entitled to a declaratory judgment that KTS must indemnify and hold VIT harmless, KTS must maintain insurance in connection with that obligation, and the purported assignment by KTS to Teak is null and void.**

VIT also seeks declaratory relief in the form of a judgment declaring that (1) "[KTS] shall indemnify and hold [VIT] harmless from any claims that may be brought against [VIT] by [Teak] or its principals that are in any way related to, connected with, or arise from the License Agreement"; (2) "[KTS] shall provide insurance, or otherwise serve as the insurer of last resort,

---

[5] The agreement also states that costs are recoverable. ECF No. 1-1 at 12. VIT asks for its costs in the complaint, ECF No. 1 at 6, and in its motion for default judgment, ECF No. 10 at 3. However, with respect to such costs, VIT has not even provided an amount for the Court to consider, stating only that its attorneys' fees are $31,306.25. *E.g.*, ECF No. 10-3 at 1–2. Without a number, the Court must deny any request for costs.

for any claims that may be brought against [VIT] by [Teak] that are related to, connected with, or arise from the License Agreement"; (3) "[t]he assignment of any claims by [KTS] to [Teak] that are related to, connected with, or arise from the License Agreement is null and void"; and (4) "[t]he assignment of any tort claims by [KTS] to [Teak] that do not arise from a direct injury to real or personal property is null and void." ECF No. 10 at 3–4.

At the hearing, the Court inquired as to whether Teak's joinder would be required under Federal Rule of Civil Procedure 19, and ordered supplemental briefing on that issue. "A court with proper jurisdiction may . . . consider *sua sponte* the absence of a required person and dismiss for failure to join." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008). "The inquiry contemplated by Rule 19 is a practical one" that is left "to the sound discretion of the trial court." *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999). Such decisions must be made pragmatically, rather than based upon strict adherence to a procedural formula. *Id.* "A court must examine the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it." *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999).

In its supplemental brief, VIT argues that Teak is not a necessary party because it is not subject to service of process. ECF No. 21 at 4–5 (citing Fed. R. Civ. P. 19(a)(1) ("A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . .")). Teak is not subject to service of process in this district because it was created under the laws of Delaware and has not engaged in transactions in

Virginia that could give rise to the exercise of personal jurisdiction. VIT's argument, however, misapplies Rule 19. That Teak is not subject to service of process in this Court does not mean that Teak is not a required party. Rather, it simply means that Teak cannot be joined. Rule 19 sets forth a two-step inquiry; first, the Court examines whether the party is "required"[6] under Rule 19(a), and second, if the party is required but joinder is not feasible, such as if the party is not subject to service of process or if joinder would defeat subject matter jurisdiction, the Court examines whether the party is "indispensable" under the factors set forth in Rule 19(b). *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005); *Deere & Co. v. Property Resources & Excavation*, LLC, No. 3:15cv531, 2016 WL 3670806, at *1 (E.D. Va. July 5, 2016).

The proper procedure for the Court, then, is to first determine whether Teak is required to be joined, if feasible, under Rule 19(a)(1). A party is required if the predicates of Rule 19(a)(1)(A), (B)(i), or (B)(ii) are established. The most relevant of those provisions in this case is Rule 19(a)(1)(B)(i), which provides that a required party is one who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). As this Court has elsewhere noted, there is little precedent about what it means to "claim" a relevant interest. *Marina One, Inc. v. Jones*, 29 F. Supp. 3d 669, 678 (E.D. Va. 2014). In *Marina One*, this Court stated that the requirement has been interpreted "narrowly, usually requiring some sort of affirmative indication by the absent party in the court hearing the Rule 19 matter." *Id.*

---

[6] The 2007 Amendments to Rule 19(a) replaced the old term "necessary" with the term "required," but this change did not affect the operation of the rule. *See Republic of the Philippines*, 553 U.S. at 855–56.

Under this standard, Teak cannot be said to have claimed an interest in the subject matter of this action.  At the hearing, counsel for VIT informed the Court that Bruce Markowitz, Esq., former counsel for KTS, now represents Teak.  In its original motion for default, VIT attached emails indicating that Mr. Markowitz is aware of this litigation.  ECF No. 10-1 at 1; ECF No. 10-2.  One such email from Mr. Markowitz, dated October 24, 2017, 12 days after the filing of the complaint, contains the subject line "Teak, LLC/VIT," suggesting that Mr. Markowitz was connected with Teak at the time.  ECF No. 10-2.  VIT's counsel also averred during the hearing that he has had discussions with Mr. Markowitz regarding this action.  *See also* ECF No. 21 at 7 n.1 (stating that "counsel for Teak, LLC has actual knowledge of these proceedings as shown in the Motion for Default Judgment," presumably referring to the attached emails from Mr. Markowitz).  Nevertheless, Teak has made no attempt to intervene in this action; nor has Teak affirmatively indicated to the Court in any fashion that it has an interest.  *See Constructure Mgmt., Inc. v. Berkley Assurance Co.*, No. GLR-16-0284, 2017 WL 818717, at *3 (D. Md. Mar. 2, 2017) (determining that, the allegedly required parties were aware of the action and did not come forward to claim any interest in the action, and thus were not required parties); *NWP Servs. Corp. v. VAC L.L.L.P.*, No. 3:15cv787, 2016 WL 4149997, at *2 (E.D. Va. Aug. 3, 2016) (assignees to a contract were not required parties in an action against the assignors because, in part, the assignees did not claim an interest relating to the subject of the action); *Galicia v. Harleysville Mut. Ins. Co.*, No. 5:11cv145-F, 2012 WL 13019076, at *2 (E.D.N.C. Aug. 10, 2012) (determining that, although a third party could have claimed an interest, there was no indication that he actually did so, and thus was not a required party); *Mainstream Const. Grp., Inc. v. Dollar Props., LLC*, 7:09cv148, 2010 WL 2039671, at *2 (E.D.N.C. May 20, 2010) (holding that two companies, who were both shown to be aware of the action, were not required

16

parties because they did not assert an interest in the subject matter of the action). Because claiming an interest is a prerequisite to the rest of the 19(a)(1)(B) inquiry, the Court concludes that Teak is not a required party. *See Kepler Processing Co., LLC v. New Market Land Co.*, No. 5:08cv40, 2008 WL 4509377, at *6 (S.D.W. Va. Oct. 2, 2008) (holding that a party was not required because it did not satisfy "Rule 19(a)'s 'initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action'") (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 682 (2d Cir. 1996)).

Having concluded that Teak is not a required party, the Court will consider the merits of VIT's declaratory judgment action. VIT seeks declaratory relief pursuant to 28 U.S.C. § 2201–2202. Section 2201 gives federal courts the power to, "upon the filing of an appropriate pleading, [ ] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaration "has the force and effect of a final judgment." *Id.* Under section 2202, further relief based on a declaratory judgment can be granted against an adverse party, "after reasonable notice and hearing." 28 U.S.C. § 2202. The Court may award declaratory relief on a default judgment. *Scottsdale Ins. Co. v. Bounds*, No. BEL-11-2912, 2012 WL 1576105, at *3 (D. Md. May 2, 2012).

Before the Court will grant a declaratory judgment, the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and [it must] 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). The controversy must be "'of sufficient

immediacy and reality to warrant' the issuance of a declaratory judgment." *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  "The Fourth Circuit has explained that a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Given that Teak has already made formal demands upon VIT for payment, Compl. ¶ 18–19, the Court concludes that this controversy is "definite and concrete," and of sufficient immediacy to justify granting a declaratory judgment in this action.  In *T.H.E. Ins. Co. v. Dowdy's Amusement Park*, a minor child and her father were injured at the defendant's amusement park.  820 F. Supp. 238, 239 (E.D.N.C. 1993).  The injured parties retained a lawyer and informed the amusement park and the park's insurer of an intention to file a lawsuit.  *Id.* The insurer promptly filed for declaratory judgment, before a complaint against the insured was filed, claiming that it had no obligation to defend.  *Id.* The court held that the insurer's potential duty to defend was an actual controversy of sufficient immediacy.  *Id.* at 239–40.  Other courts have come to similar conclusions in the insurance context.  *E.g.. Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992) (declaratory judgment action ripe even where no suit had been filed where insured made "a clear demand for payment"); *Minn. Lawyers Mut. Ins. Co. v. Tavss*, No. 2:13cv654, 2014 WL 12591665, at *5–6 (E.D. Va. May 27, 2014) (holding that the court could consider whether an insurer had a duty to defend before a suit was filed against the insured); *Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779, 786 (E.D. Va. 2007) (noting that "'even a *potential* claim,

18

such as the *probable* claim of an injured person against the insured and the insurance company, is sufficient to cause fear and jeopardy and thus to warrant the institution of a[ declaratory] action.") (quoting Edwin Borchard, *Declaratory Judgments* 637 (2d ed. 1941)). Teak has actually threatened a lawsuit, and a declaratory judgment would be useful to VIT in removing some of the uncertainty associated with such a lawsuit.

VIT first asks for a declaration that KTS indemnify and hold VIT harmless for any claims brought against it by Teak or its principals that are related to the license agreement. ECF No. 10 at 4. Section 10(a) of the agreement provides that:

> [e]xcept to the extent caused by the negligence or intentional misconduct of the VIT Parties, [KTS] shall indemnify, defend and hold harmless the VIT Parties from and against all liability, claims, actions, suits, losses, damages, fines, penalties, fees, and expenses (including without limitation attorney's and consultant's fees and expenses), of every kind and nature (a) incurred by, or asserted or threatened against, any of the VIT Parties and (b) arising out of or related to (i) the use of the Terminal or the Premises by any of the [KTS] Parties, (ii) activities of any of the [KTS] Parties on the Terminal or the Premises, [and/or] (iii) [KTS]'s breach of this Agreement.

ECF No. 1-1 at 8. VIT argues that the requirements of section 10 are met. The Court agrees, with one caveat. With respect to section 10(a)(a) Teak has actually asserted or threatened to bring claims against VIT. Compl. ¶¶ 18–19. Under section 10(a)(b), VIT's potential liability to Teak arises from KTS's breach of the no-assignment provision of the agreement, discussed in more detail below. Without KTS's unauthorized assignment to Teak, Teak would have no connection to VIT and thus no claims to make against VIT.

When asked at the hearing about the nature of Teak's claims against VIT, counsel for VIT elected not to provide further information, due to concerns about such information being made a part of the public record. Without that information, the Court cannot assess whether Teak's claims of liability are "caused by the negligence or intentional misconduct of the VIT

Parties." Accordingly, any declaratory relief must account for this fact.

Next, VIT argues that the Court should order KTS to provide insurance, pursuant to the agreement, for any claims brought by Teak. Section 11 governs the type of insurance KTS is required to maintain under the agreement. Of relevance to this action, section 11(a)(1) requires KTS to maintain "contractual liability [insurance] for [KTS's] indemnity and hold harmless obligations under th[e] Agreement." ECF No. 1-1 at 9. Given this plain provision of the contract, the Court agrees that a declaration that KTS provide such insurance is appropriate.

Finally, VIT asks this Court to declare the assignment of contract and tort claims to Teak to be null and void. As to contract claims, section nine of the agreement provides that KTS "shall not assign or transfer this Agreement, or sublicense any part of the Premises, in whole or in part, without the prior written consent of VIT, which consent VIT may withhold in its sole discretion." ECF No. 1-1 at 8. For tort claims, Va. Code § 8.01-26 provides that "[o]nly those causes of action for damage to real or personal property, whether such damage be direct or indirect, and causes of action *ex contractu* are assignable."

By failing to respond to the complaint, KTS has admitted that it purported to assign any tort or contract claims it had against VIT to Teak, and that it neither sought nor was granted consent from VIT for such an assignment. Compl. ¶¶ 17, 20. Under the plain language of the no-assignment provision, KTS breached the agreement when it purported to assign any contract claims to Teak. The no-assignment provision contains no exceptions, and prohibits assignment, in whole or in part. ECF No. 1-1 at 8. The Court deems it appropriate to uphold such a provision. *Cf. PRYM Consumer USA, Inc. v. R.I. Textile Co.*, 388 F. App'x 352, 356 (4th Cir. 2010) (upholding a no-assignment clause and deeming an assignment invalid).

The no-assignment clause does not cover tort claims, but Virginia law does. While VIT

has not elaborated about what torts Teak may accuse it of having committed, it is appropriate to declare that the assignment of any tort claims, other than those for damage to real or personal property, are null and void under section 8.01-26. *Cf. Cincinnati Ins. Co. v. Ruch*, 940 F. Supp. 2d 338, 342–45 (E.D. Va. 2013) (discussing the legislative history of section 8.01-26).

For the foregoing reasons, the Court concludes that Teak is not a required party to this action, and that the declaratory relief VIT seeks is appropriate, as detailed in the following recommendation.

## VI.   RECOMMENDATION

Based on the foregoing, the Court recommends that VIT's motion be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court recommends that VIT be **GRANTED** its requested damages, except for the two invoices from March 2015 and the interest associated with those two invoices. This total amounts to a sum of $129,656.84, plus interest. This sum includes $121,586.99 for unpaid rent, $3,655.00 for "KTS containers," and $4,414.85 for unpaid rail charges. Not later than seven days after the final disposition of this report and recommendation, after the Court has resolved any objections, VIT shall submit a final interest calculation to the Court.

The Court recommends that VIT's request for attorneys' fees and costs be **DENIED**. Further, the Court recommends that the following declaratory relief be ordered:

(1) KTS shall indemnify and hold VIT harmless from any claims, except those caused by the negligence or intentional misconduct of VIT, that may be brought against VIT by Teak or its principals that are in any way related to, connected with, or arise from the agreement;

(2) KTS shall provide insurance, or otherwise serve as the insurer of last resort, for any

claims that may be brought against VIT by Teak that are related to, connected with, or arise from the agreement;

(3) The assignment of any claims by KTS to Teak that are related to, connected with, or arise from the agreement is null and void; and

(4) The assignment of any tort claims by KTS to Teak that do not arise from a direct injury to real or personal property is null and void.

## VII.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
April 5, 2018